UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                              CRIMINAL ACTION

VERSUS                                                NO. 07-238

KEITH MACK

### RULING ON MOTION TO SUPPRESS STATEMENTS

Before this Court is a Motion to Suppress Statements (Doc. 29) filed by Defendant, Keith L. Mack ("Mr. Mack").  Mr. Mack seeks to suppress statements he made to police officers after the officers used a taser to subdue him following a foot chase on Interstate 12.  The court held a hearing on this matter on January 8, 2009, and both parties have briefed the issues raised.  The United States of America filed a post-hearing Memorandum in Opposition to defendant's Motion to Suppress Statements (Doc. 37), but defendant submitted no post-hearing response.

### Factual Background

On May 18, 2007, Baton Rouge City Police Officers set up surveillance to locate two vehicles suspected of trafficking drugs. After locating one of the vehicles, Officer Jason Thompson stopped the car because the driver, Defendant Keith Mack, had committed a traffic violation by driving on top of a solid white line marking the shoulder for "several hundred feet."

After questioning Defendant and verifying information that Defendant provided during the traffic stop, Officer Thompson asked and was granted

1

permission to search Defendant's car. Officer Thompson found approximately one kilogram of cocaine and a firearm in Defendant's trunk.[1] As Officer Thompson proceeded to arrest Defendant, Defendant fled on foot.

Officer Brett Hart pursued Defendant down I-12 for several hundred feet until Defendant fell to the ground. While on the ground, Officer Hart repeatedly ordered Defendant to remain lying on the ground. Defendant refused to obey those commands and Officer Hart then deployed his taser, hitting Defendant in the arm with one of its probes. After Defendant attempted to get up a second time, Officer Hart "drive stunned" Defendant on the back of Defendant's leg, which kept Defendant on the ground.

Following the second application, Defendant curled his arms underneath him and refused to be handcuffed. Officer Hart repeatedly ordered Defendant to put his hands behind his back so that he could be handcuffed. After Defendant refused to comply with those orders, Officer Hart "drive stunned" Defendant again, at which time Defendant complied.

Each burst from a taser lasts five seconds, unless the officer keeps his finger on the trigger. Officer Hart's taser administered two five second electrical bursts, each burst carrying between .0021 and .0036 amps. The third burst lasted six seconds.

---

[1] This Court has already denied defendant Mack's first motion to suppress the evidence found as a result of the search of his vehicle (Doc. 25). However, the Court stated that Mack could file a motion to suppress his statements if he desired. *Id.*

Following Defendant's arrest, Officer Hart advised Defendant of his *Miranda* rights. While on the way back to the scene of the traffic stop, Defendant informed Officer Hart that he was carrying a significant quantity of cocaine.

Minutes later, Defendant was taken to be processed. Special Agent Mark Lusco of the Drug Enforcement Administration asked Defendant if he was advised of his *Miranda* rights and if he understood those rights. Defendant replied in the affirmative to both questions.

Defendant then informed Special Agent Lusco that he acquired the cocaine in Houston, Texas and was taking the cocaine to New Orleans, Louisiana where he planned to package it into smaller quantities and sell for retail distribution. He purchased the firearm as a measure for protection because of the high incidence of violent crime in New Orleans.

Defendant argues that the administration of the taser three times created a coercive environment that led to the inculpatory statements. Defendant further argues that he was mentally and physically impaired such that he was unable to understand the nature of the administering of rights and/or ramifications of waiving said rights.

## **Law and Analysis**

The Fifth Circuit has held that "the standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's 'free and rational'

3

choice."² "If a person 'voluntarily, knowingly, and intelligently' waives his constitutional privilege" then those statements he makes thereafter are "not considered compelled within the meaning of the Fifth Amendment."³

Voluntary waiver of a right encompasses a waiver which is not the product of intimidation, coercion or deception.⁴ A court will look to the totality of the circumstances, determined on a case by case base, whether there was voluntary and knowing waiver of a defendant's right to remain silent.⁵

Mr. Mack alleges that he was inadequately advised of his *Miranda* rights in light of the excessive administering of a taser to him before he was advised of his *Miranda* rights. He urges that such actions created a coercive atmosphere that led to the inculpatory statements and mentally and physically impaired him to the extent that such statements should be inadmissible.

The Supreme Court "has long recognized that the right to make an arrest… necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."⁶ In the circumstances of this case, Officer Hart's use of the taser gun to effectuate the arrest of Defendant was reasonably proportionate to the difficult and uncertain situation that Officer Hart faced in this traffic stop, and did not constitute excessive force.⁷ The traffic stopped occurred

---

² United States v. Ornelas-Rodriguez, 12 F.3d 1339,1337 (5ᵗʰ Cir. 1994).
³ *Id*.
⁴ United States v. Cardenas, 410 F.3d 287,293 (5ᵗʰ Cir. 2005).
⁵ *Id*.
⁶ Graham v. Connor, 490 U.S. 386, 397 (1989).
⁷ The determination of whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to

on a busy Interstate[8], and Defendant was uncooperative by 1) fleeing on foot across the interstate – which created a situation in which either Defendant or Officer Hart could have been seriously hurt; 2) refusing to obey the officer's commands; and 3) refusing to be handcuffed. Thus, there was a reasonable need for some use of force in this arrest. The use of the taser gun may well have prevented a physical struggle and serious harm to both Defendant and the officer.

The only force that Officer Hart applied to Defendant was the three taser blows. Defendant was never hit nor was any force applied to Defendant after he was cuffed. After he was handcuffed, Officer Hart advised Defendant of his *Miranda* rights, and the exchange between Officer Hart and Defendant led Officer Hart to believe that Defendant understood those rights.

Although being struck by a taser gun is an unpleasant experience, the record indicates that the amount of force Officer Hart used was reasonably proportionate to the need for force and did not inflict any serious injury. Mr. Mack

---

evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). In *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), the Eleventh Circuit found that a deputy's discharge of a taser into Draper's chest was not excessive use of force. The deputy asked Draper, a truck driver, for his bill of lading, proof of insurance, and log book five times and Draper responded in a belligerent manner. The court explained that the deputy's "use of the taser gun to effectuate the arrest of Draper was reasonably proportionate to the difficult, tense, and uncertain situation that Reynolds faced in this traffic stop…From the time Draper met [the deputy] at the back of the truck, Draper was hostile, belligerent, and uncooperative." *Id*. at 1278. In *Todd v. Moore*, Todd fled the scene, refused to put his hands behind his back, and actively fought with the arresting officers. 2007 WL 201032 (S.D. Ohio, Jan. 23, 2007). The court found that arresting officers did not use excessive force under the circumstances when Todd was hit with a taser for three periods of five seconds each until he was subdued. *Id.* at *5.

[8] At the hearing held before this Court on January 8, 2009, a DVD was presented to the Court depicting the stop and search, and the events at the scene following the search, as were filmed by a camera in Officer Thompson's car.  The film showed the defendant fleeing across the interstate pursued by the two officers, and Officer Hart and the defendant walking back on the median of the interstate on their way back to the scene of the stop.  The defendant testified at the hearing that, in desperation, he ran down the interstate hoping that a car would hit him and end his life.

argues in effect that the use of the taser tainted his subsequent statements in one of two ways.

First, he claims that it rendered him incapable of understanding his rights under *Miranda* or of effectively waiving those rights.[9] While Mr. Mack argues that the use of the taser rendered him unable "to understand the nature of the administering of rights and/or ramifications of waiving said rights,"[10] the bursts of electricity were short and sufficient enough to enable the defendant to understand and comply with commands.[11] Further, Special Agent Mark Lusco asked Mr. Mack if he was advised of his *Miranda* rights and if he understood those rights and Mr. Mack replied in the affirmative.[12]

Second, he claims that it created a coercive environment such that his subsequent confession was not free and voluntary. While voluntariness is determined by a totality of the circumstances, Mr. Mack argues that the Supreme Court has come close "to establishing a per se rule of exclusion in instances involving violence or threats of violence."[13] In support of this argument, Mr. Mack

---

[9] Mr. Mack does not submit supporting case law or evidence indicating that administration of a taser renders the recipient incompetent for any amount of time.
[10] Doc. 29-2, page 2.
[11] Sergeant Kevin Newman, an instructor, and Officer Hart testified that during training in the use of the taser, officers, including themselves, experienced pain while the taser was used against them. They also testified, however, that after the bursts of electricity from the taser discharged into their bodies stopped, the pain they experienced during those discharges ended immediately, and they were able to function normally.
[12] While this Court notes that it may be possible for an excessive number of taser shocks to be a contributing factor in an individual's death, *see Heston v. City of Salinas,* 2009 WL 248362 at 3 (N.D. Cal. Jan. 30, 2009), this determination is not persuasive that law enforcement officers here engaged in any unlawful acts since Mr. Mack did not receive any shocks that would constitute excessive force.
[13] Doc. 29-2, page 3.

cites *Stein v. People of New York*,[14] in which the Court stated that "physical violence or threat of it by the custodian of a prisoner during detention serves no lawful purpose, invalidates confessions that otherwise would be convincing, and is universally condemned by the law." Here however, there was a lawful purpose in the use of the taser to subdue Mr. Mack, and the admissibility of his statements should be determined based on the totality of the circumstances. The force used against Mr. Mack was a result of his efforts to avoid arrest, and after his arrest, "no officer or agent threatened the defendant with electrocution or any other type of force to compel him to make a statement or confession."[15]

## **Conclusion**

For the reasons stated herein, the defendant's Motion to Suppress (Doc. 29) is DENIED.

Signed in Baton Rouge, Louisiana, on March 6, 2009.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[14] 346 U.S. 156, 183 (1953).
[15] Doc. 31, page 5.